[No. 2537-3. Division Three. October 5, 1978.]

THE STATE OF WASHINGTON, *Appellant,* v. CARLOS MORENO, *Respondent.*

*Donald C. Brockett, Prosecuting Attorney,* and *Terence M. Ryan, Deputy,* for appellant.

*Patrick K. Stiley,* for respondent.

GREEN, J.—Carlos Moreno was charged with possession of cocaine, a controlled substance. The trial court granted a motion by Mr. Moreno to suppress the cocaine and dismissed the charge. The State appeals.

The basic issue is whether the use of the cocaine in evidence would violate Mr. Moreno's Fifth Amendment privilege against self–incrimination.

On the morning of June 3, 1977, Detective Johnson of the Spokane Police Department received a telephone tip from an informant who insisted on remaining anonymous. The informant told him that a Mexican named Carlos would arrive at the Spokane airport around 12:45 p.m. that day on a flight from Los Angeles and that he would be carrying 3 ounces of cocaine. The caller also described the physical appearance of Carlos.

On the basis of this telephone call alone, Detective Johnson and Lt. McGougan went to the airport. Lieutenant McGougan positioned himself so that he could observe the passengers deplaning from the Los Angeles flight, while Detective Johnson stationed himself in the lobby of the airport terminal. Lieutenant McGougan followed the first Mexican male to leave the plane. He testified that this person, later identified as Mr. Moreno, turned and saw him and then quickened his pace. The police lieutenant caught up with him just outside the terminal doors where he stopped him by placing a hand on his shoulder. Lieutenant McGougan identified himself and asked Mr. Moreno for identification. A driver's license was produced identifying him as Carlos Moreno.

At this point, the testimony of Mr. Moreno and the police officers diverges. Lt. McGougan testified that he asked Mr. Moreno to return with him to the airport security office and Mr. Moreno agreed to do so. He stated that he may have touched Mr. Moreno in the small of the back in order to guide him along the way. Detective Johnson joined them as they reentered the airport terminal. He testified that he also guided Mr. Moreno with his hand. To the contrary, Mr. Moreno testified that Lt. McGougan told him, "Come with me" and then put a finger through one of his belt loops and walked with him to the security office.

The security office in which Mr. Moreno was questioned is a room with dimensions of approximately 5 feet by 10 feet. Mr. Moreno sat down, while Lt. McGougan stood in front of him and Detective Johnson stood by the door. Lieutenant McGougan stated that he asked Mr. Moreno, "Do you have something you shouldn't?" He responded, "What?" and the lieutenant put his finger to his nose and said, "Snorting stuff." Mr. Moreno responded by producing from his person a packet containing three baggies of cocaine. Lieutenant McGougan immediately arrested him and then, for the first time, advised him of his constitutional rights.

*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), holds that the prosecution may not use statements of the defendant stemming from a custodial interrogation unless it is demonstrated that procedural safeguards were employed to secure the defendant's privilege against self–incrimination, *i.e.,* the well–known *Miranda* warnings. The State contends that *Miranda* is inapplicable to the present case. It argues, alternatively, that (1) Mr. Moreno's act in handing over the cocaine was not a *statement,* and therefore, was not within the protection afforded by the Fifth Amendment; (2) if Mr. Moreno's act is considered testimonial in nature, police warnings were unnecessary because he was not in custody but, instead, was merely detained as part of an investigative

stop; and (3) if Mr. Moreno is found to have been in custody, his arrest was supported by probable cause, and the cocaine, which would have been discovered in a valid search pursuant to the arrest, is admissible.

■ First, we consider the assertion that Mr. Moreno's production of the cocaine was not protected by the Fifth Amendment. In *State v. Dennis,* 16 Wn. App. 417, 558 P.2d 297 (1976), the court suppressed evidence of cocaine which was produced by the defendant from his refrigerator after a police officer entered his home, stationed himself near the kitchen door, and stated that voluntary production of the evidence would save him the trouble of a search under an outstanding warrant. In *Dennis,* the State argued that the production of the cocaine was nontestimonial. The court rejected this argument, noting:

> This act served more graphically than words to convey the incriminating fact that he knew of the presence and precise location within his home of the contraband substance.

*State v. Dennis, supra* at 423. The court distinguished those cases which hold that the giving of blood samples or handwriting or voice exemplars are not protected by the Fifth Amendment. According to *Dennis,* such acts necessitate the consideration of extraneous factors such as comparison and identification in order to prove guilt, while the defendant's production of a controlled substance, standing alone, is incriminating and, therefore, testimonial. We find the *Dennis* rationale persuasive. Thus, we hold that Mr. Moreno's production of the cocaine, like that of the defendant in *Dennis,* was testimonial in nature.

■ Second, this court recognizes that a police officer may stop a person suspected of committing a crime if the stop is based on a well–founded suspicion not amounting to probable cause and if the stop is conducted in a reasonable manner in light of the circumstances of the particular case. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Clark,* 13 Wn. App. 21, 533 P.2d 387 (1975).

An anonymous tip, when corroborated by an officer's independent investigation or observation, is sufficient to justify an investigative stop. *People v. Superior Court,* 2 Cal. App. 3d 197, 82 Cal. Rptr. 463 (1970); *People v. Kinlock,* 55 App. Div. 2d 627, 389 N.Y.S.2d 399 (1976). *See State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243 (1975). Here, the tip was corroborated not only by Mr. Moreno's presence at the airport at the predicted time, but also by his behavior when he realized that Lt. McGougan was following him. Because the crime involved was serious and one that poses a threat to society, the officer was justified in stopping Mr. Moreno on less corroboration than might otherwise be required. *See State v. Lesnick, supra* at 944–45.

However, while an officer may stop a person on the basis of a well–founded suspicion and request that the suspect identify himself and explain his activities, *State v. Gluck,* 83 Wn.2d 424, 426, 518 P.2d 703 (1974), the officer cannot proceed with specific questions designed to elicit incriminating statements without being adjudged to have made a formal arrest. *See also United States v. Richards,* 500 F.2d 1025, 1029 (9th Cir. 1974); and *United States v. Van Lewis,* 409 F. Supp. 535, 545 (E.D. Mich. 1976). Here, Lt. McGougan's questioning went beyond a general request that the defendant explain his activity, *i.e.,* his presence in the airport, what he was there for. Rather, Lt. McGougan's suspicions had focused on the defendant and his questions were designed to elicit incriminating statements. This is precisely the situation to which the *Miranda* warnings are designed to apply.[1]

*Oregon v. Mathiason,* 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711 (1977), relied upon by the State, is not controlling here. There, the court held that police questioning of a

---

[1]The State cites *United States v. Oates,* 560 F.2d 45 (2d Cir. 1977), and *United States v. Van Lewis,* 409 F. Supp. 535 (E.D. Mich. 1976), in support of its contention that the stop did not change into an arrest when Mr. Moreno was asked to move to the security office for questioning. Since we have decided that the questions changed the detention into an arrest, we need not consider this contention.

defendant in a police station concerning a burglary did not amount to custodial interrogation within the meaning of the *Miranda* rule. However, in *Mathiason* the defendant voluntarily went to the police station, where he was immediately informed that he was not under arrest. *Mathiason* was recently distinguished in *United States v. DiGiacomo,* 23 Crim. L. Rptr. 2398 (10th Cir. July 7, 1978). In *DiGiacomo,* the defendant had been stopped by federal agents, told that he was suspected of passing counterfeit money, and advised that he could choose between immediate arrest and "voluntary" appearance at the Secret Service office the following morning. Under those circumstances, the court found that the defendant was in custody and that the officers should have advised him of his constitutional rights. In the present case, nothing was said about arrest. In fact, the size of the security office and the position of Detective Johnson, who stood in front of him, intimated to Mr. Moreno that he was not free to leave. Thus, the interrogation occurred in a custodial setting and the specific questioning went beyond the scope of questioning authorized for an investigative stop.

Finally, we are not persuaded by the State's contention that probable cause existed warranting a belief that Mr. Moreno had committed a crime and, therefore, he was validly under arrest at the time he handed over the cocaine. In determining whether an informant's tip constitutes probable cause for arrest, we are guided by the constitutional criteria contained in *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). *Aguilar* adopted a "two-pronged test" which must be satisfied before a warrant may issue. *Spinelli v. United States,* 393 U.S. 410, 417 n.5, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969), extended the *Aguilar* test to warrantless searches. This test was described in *State v. Chatmon,* 9 Wn. App. 741, 745, 515 P.2d 530 (1973):

> Essentially, in a case such as this, the test requires that there appear some underlying circumstances from which the informant concluded that the contraband was

where he claimed it to be, and [2] some further circumstances from which the officer could conclude that the informant was "reliable." *Aguilar v. Texas,* 378 U.S. at 114. *See also Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

In discussing the first prong of the test, the court in *State v. Chatmon, supra* at 745, stated that:

> Where an informant supplies information that a suspect is in possession of contraband, and accompanies this account with a wealth of collateral detail which describes the suspect and his movements, an officer who by his observations corroborates the collateral detail may reasonably infer that the information about the crime itself was gained in a reliable way.

Here, *Aguilar's* first prong is satisfied by Lt. McGougan's observation that the defendant matched the description given by the informant and was at the airport deplaning from a Los Angeles flight as the informant had predicted.

■ However, the State must also satisfy the second prong of the *Aguilar* test by demonstrating that the informant himself is reliable. In *Chatmon,* at page 746, the court noted that, standing alone, information supplied by an anonymous informant (as opposed to one known by the police but merely unidentified) will not usually create probable cause. An officer's subsequent observations which merely confirm the suspect's description and movements as given by the informant do not raise an inference that the law is being violated. However, the court suggests that the reliability of an anonymous informant could be established by a description of the informant, his purpose for being at the locus of the crime, and the reason for his desire to remain anonymous. *State v. Chatmon, supra* at 748.

Here, probable cause for arrest did not exist because the informant's reliability was not established. The fact that Mr. Moreno arrived on the flight does not create an inference that he has committed the crime alleged by the informant. While Mr. Moreno appeared to increase his pace when he noticed that he was being followed, thus creating a

well–founded suspicion in Lt. McGougan sufficient to jus-
tify an investigative stop, such act does not warrant an
assumption that an offense has been committed. Therefore,
the State's final contention must fail.

Affirmed.

McINTURFF and ROE, JJ., concur.

Reconsideration denied October 24, 1978.

Review denied by Supreme Court February 2, 1979.