[No. 54357–7.   En Banc.   May 12, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL
SHAWN WETHERED, *Petitioner.*

*Albert Armstrong* and *Mozena & Armstrong,* for petitioner.

*Arthur D. Curtis, Prosecuting Attorney,* and *Richard Melnick, Deputy,* for respondent.

UTTER, J.—The defendant challenges the refusal of the court to suppress hashish that he handed to police officers without being informed of his rights. We affirm the Court of Appeals holding that the hashish is not suppressible under the fifth amendment to the United States Constitution and affirm the conviction for unlawful delivery of a controlled substance.

The essential facts are not disputed. At approximately 8 p.m. on May 17, 1985, Detective Dave Dohman was parked at the Marine Park boat launch area in Vancouver. In his undercover capacity, Dohman noticed Michael Wethered drive into the park in a Ford Torino. Dohman observed Wethered reach down to the floor of the vehicle, and then saw Wethered pull out what appeared to be a brown chunky substance. Dohman saw Wethered move his arm in what appeared to be a cutting motion. A woman approached Wethered's vehicle and placed money on the windowsill. Wethered took the money and gave her some of the brown chunky substance. Dohman, through his experience in the Vancouver Police Department Narcotics Unit, was aware that hashish normally comes in a brown chunky form.

Dohman, because of his undercover role, radioed his observations to dispatch. Dispatch sent three police vehicles, including one driven by Detective Keeney, to the scene. Keeney approached Wethered, asked Wethered for identification and placed him under arrest. Keeney did not warn Wethered of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). Keeney, after asking Dohman over the radio how to proceed, told Wethered he could either "do it the easy way or the hard way", *i.e.,* turn the hashish over to

him or he would have the vehicle impounded for a later search.

Wethered was concerned about the passengers in his car, two of whom were a young woman and a baby, and asked if he gave the officers the drugs could the others go and his car not be impounded. Keeney assured Wethered that if Wethered gave the officers the drugs the car would not be impounded. Wethered went to the car, retrieved a plastic bag containing a brown chunky substance from one of the passengers, and gave it to Keeney. A records check was run which showed that Wethered's driver's license had been revoked and he was a habitual offender. Wethered's car was subsequently impounded despite Keeney's assurances. A chemical test at the Washington State Crime Laboratory revealed the brown chunky substance Wethered handed to Keeney contained a derivative of marijuana.

Wethered moved to suppress all evidence seized pursuant to questioning by the police. The trial court determined that the production of the hashish was voluntary, and held the evidence admissible. At a bench trial on stipulated facts, the court convicted Wethered of unlawful delivery of a controlled substance. Wethered appealed his conviction. In an unpublished opinion, the Court of Appeals held Wethered's act of producing hashish was testimonial and inadmissible because he had not been warned of his constitutional rights pursuant to *Miranda v. Arizona, supra.* However, it held the hashish itself admissible. The Court of Appeals found the error in admitting evidence of the act of surrendering the hashish harmless and affirmed the conviction. This court granted Wethered's petition for discretionary review.

### SURRENDERING HASHISH AS TESTIMONIAL ACT

The Court of Appeals held that Wethered's act of handing hashish to the officers was testimonial, as it was an admission that he was aware of the hashish in his vehicle; therefore the police were not entitled to request this act without first warning Wethered of his rights pursuant to

*Miranda.* The Court of Appeals relied primarily on the decisions in *State v. Dennis,* 16 Wn. App. 417, 558 P.2d 297 (1976) and *State v. Moreno,* 21 Wn. App. 430, 585 P.2d 481 (1978).

The facts of *Dennis* are very similar to those presented here. An officer detained the defendants in their home and kept an eye on a refrigerator where he suspected drugs to be. He suggested to the defendant that the defendant produce the drugs voluntarily and save the officer the trouble of a search. The defendant thereupon removed several packages of cocaine from the refrigerator and placed them on the table before the officer, who seized them. *Dennis,* at 419. The trial court found that the defendant produced the evidence freely and voluntarily without any coercion. *Dennis,* at 420. The Court of Appeals held that the defendant was in custody, and therefore statements elicited by police questioning must be preceded by *Miranda* warnings. *Dennis,* at 421.

The *Dennis* court then considered whether the defendant's act of producing evidence against himself was testimonial, so as to invoke the protections of *Miranda.* It first considered United States Supreme Court and Washington cases holding that when a defendant is simply the source of real or physical evidence, this is not self–incrimination for the purposes of the fifth amendment to the United States Constitution. *Dennis,* at 422–23. The *Dennis* court distinguished those cases, which involved compulsion of physical evidence such as blood or handwriting samples as follows:

> Unlike the activities required of the defendants in the above cited cases, which necessitate the application or consideration of extraneous facts or circumstances such as comparison and identification in order to prove guilt, the act of defendant Dennis in procuring the cocaine from its hiding place and placing it on the table in itself constituted an admission. This act served more graphically than words to convey the incriminating fact that he knew of the presence and precise location within his home of the contraband substance. . . . Defendant's response was therefore testimonial in nature and served

to incriminate him, and the evidence should have been suppressed.

*Dennis,* at 423–24.

*Moreno* similarly involved a defendant producing contraband when questioned by officers. The defendant in *Moreno* was physically detained by officers in a security office of an airport, and basically asked if he possessed cocaine. In response he produced a packet containing three baggies of cocaine. The *Moreno* court found the rationale in *Dennis* convincing, and held production of the cocaine to be testimonial, and therefore inadmissible without prior *Miranda* warnings. *Moreno,* at 433; *see also People v. Hoffman,* 84 Ill. 2d 480, 419 N.E.2d 1145 (1981) (answering officer's question of where the gun was by showing him the gun is a testimonial act requiring *Miranda* warnings); *People v. Speller,* 121 Misc. 2d 354, 355, 467 N.Y.S.2d 806, 807 (1983) ("An admission, in addition to being oral, may take the form of any act on defendant's part which tends to convey his thought processes").

This court discussed *Dennis* and *Moreno* in *State v. Franco,* 96 Wn.2d 816, 639 P.2d 1320 (1982). An issue in *Franco* was whether a statute authorizing compulsion of a breath sample upon penalty of license revocation violated the privilege against self–incrimination. This court stated with regard to *Dennis* and *Moreno:*

> A review of these cases convinces us that they do not purport to change any existing case law. While we might not adopt the court's language that the production of the cocaine was "testimonial in nature", *Dennis,* at page 422, because the acts of producing the drug supplied the incriminating ingredient of guilty knowledge necessary to prove a case; we note that the *Moreno* and *Dennis* courts were careful to distinguish the *Schmerber* [*v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966)] line of cases where the defendant was simply a "'source of "real or physical evidence". *Dennis,* at 422. *See Moreno,* at 433. It has been consistently held that compulsion which makes an accused the source of real or physical evidence does not violate the privilege. It is only violated

when the accused is compelled to make a testimonial communication that is incriminating.

*Franco,* at 827. We reaffirm *Franco,* and now also hold that *Dennis* and *Moreno* correctly state the rule that where a police officer's questioning or requests induce a suspect to hand over or reveal the location of incriminating evidence, such nonverbal act may be testimonial in nature; the act should be suppressed if done while in custody in the absence of *Miranda* warnings. Here, Wethered's act of producing the hashish was a confession of knowledge concerning the hashish, and is not admissible against him.

Our holding does not change the law with respect to situations involving consent to search. *In State v. Rodriguez,* 20 Wn. App. 876, 880, 582 P.2d 904 (1978) and *State v. Silvernail,* 25 Wn. App. 185, 191, 605 P.2d 1279, *cert. denied,* 449 U.S. 843, 66 L. Ed. 2d 51, 101 S. Ct. 124 (1980), the Court of Appeals distinguished *Dennis* because in those cases the police did not ask for the contraband, but instead requested permission to search or for keys to a car trunk. Granting permission to search is consistent with innocence, whereas producing contraband from a hiding place is essentially an admission of guilt. Here, the officer did not ask for permission to search but asked Wethered to hand him contraband where doing so was an admission of knowledge of the contraband and thus incriminated Wethered.

### Secondary Evidence of Hashish Itself

The Court of Appeals held that although Wethered's production of hashish in response to the officer's questioning was inadmissible because he was not advised of his rights under *Miranda,* the hashish itself was admissible.

Wethered argues that his claims should be decided under the provisions of the Washington State Constitution. We would normally first consider Wethered's claimed violation of his individual rights under the provisions of the Washington Constitution. *State v. Coe,* 101 Wn.2d 364, 679 P.2d 353 (1984). One of the reasons for adopting this rule in *Coe*

was to enable us to create a principled body of state constitutional law.

As a further aid to developing a sound basis for our state constitutional law, in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986), we developed nonexclusive criteria to use as interpretive principles of our state constitution. In addition to the textual language itself, we identified the history of the state constitution and common law as important interpretive aids. In addition, we recognized Washington's laws, including statutes, as a source to identify issues of interest to Washington citizens. Matters of particular state or local concern also assist the court in determining whether there is a need for national uniformity or whether that need is outweighed by state policy considerations. In addition, in *Gunwall* we recognized that differences in the text of parallel state and federal constitutional provisions can indicate the state founders intended a meaning different from that of the drafters of the federal Bill of Rights.

■ Wethered urges this court to follow our holding in *State v. Lavaris,* 99 Wn.2d 851, 664 P.2d 1234 (1983) under Const. art. 1, § 9 and cites *State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980) as general authority that the Washington Constitution can be and has been interpreted as more protective of individual rights than the United States Constitution. He fails to use the *Gunwall* interpretive principles to assist this court to determine whether the self–incrimination provisions of that article confer the right to *Miranda* or *Miranda*–like warnings. By failing to discuss at a minimum the six criteria mentioned in *Gunwall,* he requests us to develop without benefit of argument or citation of authority the "adequate and independent state grounds" to support his assertions. *See Michigan v. Long,* 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983). We decline to do so consistent with our policy not to consider matters neither timely nor sufficiently argued by the parties. *In re Rosier,* 105 Wn.2d 606, 616, 717 P.2d 1353 (1986).

While many states have found independent grounds in their own constitutions for *Miranda* warnings and have held their constitutions to provide wider protection than the United States Constitution,[1] we will not consider that question until the issue is adequately presented and argued to us. We therefore will only consider Wethered's claims under federal constitutional law. The Court of Appeals is clearly correct under current federal rulings.

■ The Court of Appeals relied primarily on the reasoning of the United States Supreme Court in *Oregon v. Elstad,* 470 U.S. 298, 84 L. Ed. 2d 222, 105 S. Ct. 1285 (1985). In *Elstad,* the Court considered the admissibility of a confession given after *Miranda* warnings where the defendant had earlier confessed without being informed of his rights. The Court held that, absent deliberately coercive or improper tactics in obtaining the initial statement which would constitute an actual violation of the Fifth Amendment, the subsequent "Mirandized" confession is admissible. *Elstad,* at 314. Because *Miranda* provides greater protection than the Fifth Amendment, the Court held the exclusionary rule does not apply to all evidence derived from *Miranda* violations. *Elstad,* at 306–07.

Because the *Elstad* opinion relies heavily on volition of the defendant as an insulating factor in successive–confession cases, it does not necessarily foreclose applying the "fruit of the poisonous tree" rule, *see Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), where the evidence derived from the admission is physical. *Elstad,* at 318 (Brennan, J., dissenting). However, the majority of the Court has given other indications that the "fruit of the poisonous tree" rule does not apply where violations of the right to *Miranda* warnings do not involve actual coercion.

In *Michigan v. Tucker,* 417 U.S. 433, 41 L. Ed. 2d 182, 94 S. Ct. 2357 (1974), the Court admitted the testimony of a

---

[1]*See* Note, *Miranda and the State Constitutions: State Courts Take a Stand,* 39 Vand. L. Rev. 1693, 1717–34 (1986).

third party witness discovered by the police through a statement made by the defendant without *Miranda* warnings. The Court in *Tucker* also held that the exclusion of some secondary evidence would be warranted by a true Fifth Amendment violation involving coercion, but not a mere *Miranda* violation. *Tucker,* at 444–45. Although the Court has not directly addressed the question of admissibility of physical evidence discovered through a confession given without *Miranda* warnings, admitting such derivative evidence appears to be the logical next step in the Court's reasoning. *See* Note, *Restricting the Miranda Presumption and Pruning the Poisonous Tree: Oregon v. Elstad,* 16 Golden Gate U. L. Rev. 331, 342–43 (1986). Dictum in *Elstad* strongly suggests that a *Miranda* violation without actual coercion will not taint evidence derived from a confession, no matter what form such evidence takes. *Elstad,* at 308 ("no actual infringement of the suspect's constitutional rights, the case was not controlled by the doctrine expressed in *Wong Sun* that fruits of a constitutional violation must be suppressed").

Here, the trial court found that, although there was a *Miranda* violation in requesting Wethered to hand over the hashish, there was no direct Fifth Amendment violation, or coercion:

> Under the totality of [the] circumstances the production of incriminating evidence was voluntary and resulted from defendant's own essentially free and unconstrained choice whose will had not been overborne and whose capacity for self–determination had not been critically impaired.

Clerk's Papers, at 6–7. Extending the Court's reasoning in *Elstad* and *Tucker,* the hashish derived from the non–Mirandized testimonial act need not be suppressed under the fifth amendment to the United States Constitution.

■ The hashish itself being admissible, the sole issue under the United States Constitution is whether the trial court's error in considering the confessional aspect of Wethered's surrendering the hashish was harmless error. A

constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable finder of fact would have reached the same result in the absence of the error. *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986). Here, the stipulated untainted evidence against Wethered—the detective's observation of Wethered selling a brown chunky substance from his car and the chemical test of the brown chunky substance revealing it to be a derivative of marijuana— overwhelmingly supports Wethered's conviction for unlawful delivery of a controlled substance. The error in admitting Wethered's act of handing the hashish to the officer was harmless.

We are bound by the United States Supreme Court's determination that evidence derived from a confession made in violation of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966) need not be suppressed under the Fifth Amendment absent actual coercion. Lacking the benefit of briefing and argument, we do not reach the issue of whether such evidence is admissible under the state constitution.

PEARSON, C.J., BRACHTENBACH, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., and WETHERALL, J. Pro Tem., concur.

DORE, J., concurs in the result.