[No. 9744-7-III.   Division Three.   November 28, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. BROCK ELLIOTT ALAN MASON, *Appellant.*

*Hugh Spall,* for appellant (appointed counsel for appeal).

*David A. Pitts, Prosecuting Attorney,* and *L. Candace Hooper, Deputy,* for respondent.

MUNSON, J.—In a CrR 3.5 and 3.6 hearing, the court determined the seized contraband and Mr. Mason's statements were admissible. Based upon stipulated facts, he was convicted of possession of a controlled substance (cocaine). He contends the court erred in (1) failing to suppress the evidence, and (2) determining no disputed material facts were present.

On October 2, 1988, Officer Scott Phipps of the Central Washington University police station answered a call requesting assistance in removing a person from a campus apartment. Upon arrival, Officer Phipps observed two individuals, Amy Schmitt and Brock Mason, her former boyfriend, arguing in the living room. Ms. Schmitt was crying and screaming for Mr. Mason to leave. She told the officer Mr. Mason was harassing her, had unlawfully entered her apartment and refused to leave. She also indicated that during the argument, he had picked up a kitchen knife, held it to his chest, and threatened to kill himself if she made him leave.

Officer Phipps recognized Mr. Mason from a similar dispute earlier that year. On February 13, 1988, Ms. Schmitt had made a similar call to the police requesting Mr. Mason's removal from her dormitory room. At Officer Phipps' request, Mr. Mason voluntarily left the premises. Five to 10 minutes later, a radio dispatch announced a suicide attempt in progress at Mr. Mason's residence; he had taken a knife and cut his wrists, producing superficial lacerations. Upon arrival, Officer Phipps took him into protective custody.

Based upon the current threat of suicide, Ms. Schmitt's emotional state, and his knowledge of Mr. Mason's previous attempt, Officer Phipps determined protective custody was appropriate. He told Mr. Mason he was taking him to the campus police station to meet with mental health workers. Officer Phipps then conducted a pat–down search to ensure Mr. Mason had nothing in his possession that he could use to hurt either himself or Officer Phipps. During this process, Officer Phipps felt a hard object in Mr. Mason's pocket. He reached into the pocket, removed a set of keys, and simultaneously pulled out a bindle containing what he believed to be a controlled substance.

Subsequent to the initial pat–down procedure and the discovery of the first bindle, Officer Phipps thoroughly searched Mr. Mason, including his jacket and wallet, and found a total of six bindles. Two of the bindles were determined to contain cocaine, including the bindle initially removed with the keys. He was arrested for possession of a controlled substance, transported to the campus police station, and placed in a holding room to await the arrival of a mental health worker. He was then advised of his rights, which he waived; thereafter he admitted possession of the cocaine.

On December 7, 1988, a combined CrR 3.5 and 3.6 hearing was held. The court ruled both the seized evidence and Mr. Mason's statement were admissible. It also determined

there were no disputed material facts. He was tried by the court on stipulated facts[1] and found guilty. He appeals.

First, Mr. Mason contends the trial court erred in determining his initial detention for mental health purposes and the subsequent pat–down search were lawful, thus improperly providing a basis for the admission of the physical evidence and his statement.

Under RCW 71.05.150, mentally disordered persons may be detained for evaluation and treatment. This detention is typically at the direction of mental health professionals,[2] either upon independently investigated facts or in some cases on an emergency basis requiring immediate action. Under certain circumstances, however, a police officer on his own initiative is authorized to detain such an individual. RCW 71.05.150(4) provides in relevant part:

> A peace officer may, without prior notice of the proceedings provided for in subsection (1) of this section, [petition for initial detention] *take or cause such person to be taken into custody* and immediately delivered to an evaluation and treatment facility:
>
> . . . .
>
> (b) When he has reasonable cause to believe that such person is suffering from a mental disorder and *presents an imminent likelihood of serious harm to others or himself* . . .

(Italics ours.)

Under RCW 71.05.020(3)(a), "[l]ikelihood of serious harm" is defined in relevant part as "[a] substantial risk that physical harm will be inflicted by an individual upon his own person, as evidenced by threats or attempts to commit suicide or inflict physical harm on one's self".

Mr. Mason first asserts Officer Phipps lacked the reasonable cause necessary to alert him that Mr. Mason was a danger to himself or others. He notes Ms. Schmitt told

---

[1]The stipulated facts and evidence consisted of the police and lab reports, as well as the knife and bindles of cocaine.

[2]A mental health professional is defined as "a psychiatrist, psychologist, psychiatric nurse, or a social worker, and such other mental health professionals as may be defined by rules and regulations adopted by the secretary pursuant to the provisions of this chapter". RCW 71.05.020(11).

Officer Phipps at the apartment that the suicide talk was merely a bluff. When questioned about this fact, Officer Phipps indicated the following:

> What I recall her saying [was] she wanted him to leave the apartment, but she was afraid he would harm himself if he did leave and it had been a harassment thing since the beginning. That she was always—that's what her secret fear was that if she pushed it too far he would hurt himself.

At the time of the pretrial hearing, Ms. Schmitt was once again Mr. Mason's girl friend. Undoubtedly, this fact was considered by the court in weighing witness credibility.

■ Officer Phipps' decision to place Mr. Mason in custody was not based solely on his demeanor, although his testimony did indicate Mr. Mason was "upset". However, Ms. Schmitt's demeanor upon Officer Phipps' arrival, notwithstanding her subsequent statement, her statement about Mr. Mason's knife threat to himself, and his suicidal history support the officer's decision that custodial detention, pending an interview with a mental health worker, was appropriate for Mr. Mason's safety.

■ Mr. Mason next asserts the campus police station is not an "evaluation and treatment facility" as defined by RCW 71.05.020(16):

> [A]ny facility which can provide directly, or by direct arrangement with other public or private agencies, emergency evaluation and treatment, outpatient care, and short term inpatient care to persons suffering from a mental disorder, and which is certified as such by the department of social and health services . . . *And provided further, That no correctional institution or facility, or jail, shall be an evaluation and treatment facility within the meaning of this chapter.*

(Italics ours.) Since the campus police station was not a certified facility under the statute, a fact acknowledged by the State, Mr. Mason asserts the detention was an illegal seizure under the fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution. We disagree.[3] Where the officer

---

[3]Adoption of Mr. Mason's interpretation of this statute would in many situations require police officers to transport civil detainees great distances, since not

intended to take Mr. Mason is not the proper focus. The fact is he had good cause to fear for both Mr. Mason's and his own safety. The provision prohibiting transmittal to a correctional institution or facility or jail[4] is presumably to ensure separation of civil detainees from those incarcerated on criminal charges or convictions. Here, Mr. Mason was placed in a holding room to await arrival of a mental health worker called to the campus police station. No evidence suggests he was incarcerated in a cell or placed in with persons charged with a crime. We find that holding a civil detainee for a short time in a segregated, nonjail–type room pending the arrival of a mental health worker is not a violation of RCW 71.05.020(16) or 71.05.150(4)(b) and (5).

The conviction is affirmed.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will not be published.

THOMPSON, C.J., and SHIELDS, J., concur.

Review denied at 114 Wn.2d 1010 (1990).

---

all cities in the state have a certified mental health facility. Such a constrained reading of the provision would place a significant strain on a number of rural communities throughout the state.

[4]The campus police station does not fit the definition of a "correctional institution" as formerly defined in RCW 72.13.010 and 72.15.010 (repealed by Laws of 1988, ch. 143, §§ 19(2), 20(1)), or a correctional facility or jail, RCW 70.48.020(4), (5).