[No. 19526-7-II.    Division Two.    August 15, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. SHELDON
DODS, *Appellant*.

*Robert M. Quillian* and *Thomas E. Doyle,* for appellant (appointed counsel for appeal).

*Gary P. Burleson, Prosecuting Attorney*, and *Eric Valley, Deputy*, for respondent.

MORGAN, J. — On March 4, 1993, Sheldon Dods pleaded guilty to public indecency. Because he was already a registered sex offender, the crime was a class C felony.

On March 18, 1993, Dods was sentenced to 120 days in jail, with an additional 240 days "converted to residency and compliance with all rules at" an alcohol treatment facility.[1] Further, he was ordered to "participate in treat-

---

[1]Ex. 2.

ment and counseling as directed by his community corrections officer and as required by" the alcohol treatment facility.[2] At least at the times material here, a condition of his sentence was that he "shall take polygraph and plethysmograph testing as directed by his therapist."[3]

On June 28, 1994, Dods submitted to a polygraph test administered by a polygrapher named Ron Yunck. Apparently, the test was administered near the office of Dods' community corrections officer. Inexplicably, Yunck did not give *Miranda* warnings.[4]

During the pretest interview, Dods told Yunck that he had touched the vaginal area of a minor female, over her clothing, as he and she were riding in a car. He also disclosed that he had masturbated in the presence of the same person, without her knowledge, while babysitting. He said these events had occurred in Mason County.[5]

During the polygraph test itself, Yunck asked whether Dods was "holding back information about any sexual contact with a minor child?"[6] Dods answered no. According to the machine, however, Dods was being deceptive.

According to the trial court's findings, to which no error is assigned on appeal, "Yunck did not use any coercive tactics" during either the pretest interview or the test itself.[7] On the contrary, Dods "voluntarily submitted to the polygraph examination."[8] If Dods had refused the examination, however, the community corrections officer

---

[2]Ex. 2.

[3]Ex. 3. Although the record is not clear, the parties seem to agree, or at least assume, that this condition was added in late 1993 or early 1994.

[4]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R. 3d 974 (1966). Certainly, it is wise to give *Miranda* warnings whenever an out-of-court examination is being conducted under an order of the court. Yunck did have Dods sign a consent form, but that form did not contain an adequate statement of the *Miranda* warnings.

[5]Ex. 1 at 4-5.

[6]Ex. 1 at 3.

[7]Finding of Fact 12.

[8]Finding of Fact 13.

would have recommended that community supervision be revoked, and that Dods be returned to jail.[9]

Immediately after the test, Yunck informed Dods' community corrections officer, Ken Pinkerton, of what had occurred. Immediately, "Pinkerton asked [Dods] to join him"[10] in his office. Before asking any questions, Pinkerton correctly advised Dods of his *Miranda* rights. Dods responded, according to a finding of fact to which no error is assigned on appeal, by saying "that he understood his rights and that he was willing to talk."[11] Later, the trial court found "a voluntary, intelligent and knowing waiver."[12]

Pinkerton's interview lasted between 30 and 60 minutes. During its course, Dods admitted to, and gave more details about, the events he had described when speaking with Yunck.

Using Dods' statements, Pinkerton located and interviewed the minor female with whom Dods had been riding in the car. Like Dods, she stated Dods had rubbed her chest, breast, and vagina while they were riding together. She had not previously reported the incident, and we assume it would not have come to light but for Pinkerton approaching her family.

On November 2, 1994, the State charged Dods with attempted child molestation in the first degree. Dods moved to suppress his statements to Yunck, his statements to Pinkerton, and the testimony of the victim, all on the ground that Yunck had not advised him of his *Miranda* rights. The trial court denied the motion, concluding in part that Dods' statements to Pinkerton were admissible, even if Dods' statements to Yunck were not.

Dods waived a jury, and the case proceeded to a bench trial. Dods' statements to Yunck and Pinkerton were

[9]Finding of Fact 22.

[10]Finding of Fact 14.

[11]Finding of Fact 15.

[12]Conclusion of Law 3.

admitted over objection. Testimony from the victim and her mother was admitted over objection. The polygraph results were not offered or admitted. The court convicted and imposed a standard range sentence.

On appeal, Dods contends that the trial court should not have admitted his statements to Yunck because he was not given *Miranda* warnings. He also contends that the trial court should not have admitted his statements to Pinkerton, or testimony from the victim or her family, because those items of evidence were the fruit of the poisonous tree. He concludes that the conviction should be reversed.

For the balance of this opinion, we assume that Dods' statements to Yunck were inadmissible because Yunck failed to administer *Miranda* warnings.[13] The remaining question is whether Dods' statements to Pinkerton, and the testimony from the victim and her mother, constituted the fruit of the poisonous tree.

Two cases are central to this question. They are *Oregon v. Elstad*,[14] and *Michigan v. Tucker*.[15] The first applies to Dods' statements to Pinkerton, while the second applies to Pinkerton's discovery of the victim and her family.

In *Oregon v. Elstad*, two officers arrested a burglary suspect at his home in Oregon. Without advising him of his *Miranda* rights, they asserted he had been involved in the burglary. He replied, "Yes, I was there."[16] An hour later, at the police station, the same officers gave *Miranda* warnings for the first time. The defendant said he understood and was willing to talk. Then, he gave a written, signed confession.

---

[13]*Compare Estelle v. Smith*, 451 U.S. 454, 465, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981) (court initiated (i.e., ordered) defendant to undergo psychiatric examination) *with Buchanan v. Kentucky*, 483 U.S. 402, 422-23, 107 S. Ct. 2906, 97 L. Ed. 2d 336 (1987) (defendant initiated (i.e., volunteered for) psychiatric examination).

[14]470 U.S. 298, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985).

[15]417 U.S. 433, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974).

[16]*Elstad,* 470 U.S. at 301.

After being charged with burglary, the defendant moved to suppress (a) the statement at his home as violative of *Miranda*, and (b) the statements made at the police station as the fruit of the poisonous tree. The State conceded he had been in custody during the relevant times at his home, and the defendant conceded "that the officers made no threats or promises either at his residence or at the Sheriff's office."[17] The trial court denied the motion and convicted. The Oregon Court of Appeals reversed, "holding that [defendant's] signed confession, although voluntary, was rendered inadmissible by a prior remark made in response to questioning without benefit of *Miranda* warnings."[18] The Oregon Supreme Court denied review.

■■ On certiorari, the United States Supreme Court "consider[ed] the question whether the Self-Incrimination Clause of the Fifth Amendment requires the suppression of a confession, made after proper *Miranda* warnings and a valid waiver of rights, solely because the police had obtained an earlier voluntary but unwarned admission from the defendant."[19] Answering no, the Court stated that

> absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.[20]

And the Court added, a few pages later:

---

[17]*Elstad,* 470 U.S. at 302.

[18]*Elstad,* 470 U.S. at 300.

[19]*Elstad,* 470 U.S. at 303.

[20]*Elstad,* 470 U.S. at 314.

[T]here is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of *Miranda,* was voluntary. The relevant inquiry is whether, in fact, the second statement was also voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative. We find that the dictates of *Miranda* and the goals of the Fifth Amendment proscription against use of compelled testimony are fully satisfied in the circumstances of this case by barring use of the unwarned statement in the case in chief. No further purpose is served by imputing "taint" to subsequent statements obtained pursuant to a voluntary and knowing waiver. We hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings.[21]

In *Michigan v. Tucker,* a woman was beaten and raped. Due to her injuries, she was never able to identify her attacker. A dog found in the home led police to the defendant, whom they arrested at his home. After they took the defendant to the police station, and questioned him without giving adequate *Miranda* warnings, he said, voluntarily, that he had not perpetrated the crime and that one Henderson could corroborate his story. As a result of his statements, the police contacted Henderson, whose information, it turned out, tended to inculpate rather than exculpate. Later, then, the State wanted to call Henderson as a prosecution witness.

After being charged with rape, the defendant moved to suppress Henderson's testimony, arguing it had been discovered as a direct result of his (the defendant's) non-*Mirandized* statements. The trial court denied the motion, the defendant was convicted, and the Michigan appellate

---

[21]*Elstad,* 470 U.S. at 318.

courts affirmed. When the defendant filed for habeas corpus, however, the lower federal courts reversed.

On certiorari, the United States Supreme Court "was asked to extend the *Wong Sun* [*v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)] fruits doctrine to suppress the testimony of a witness for the prosecution whose identity was discovered as the result of a statement taken from the accused without benefit of full *Miranda* warnings."[22] Declining to do that, the Court held that "[t]he unwarned confession must, . . . be suppressed, but . . . that introduction of [Henderson's] testimony did not violate Tucker's Fifth Amendment rights."[23]

In this appeal, Dods does not argue that federal law and Washington law are different.[24] Thus, the pertinent factual questions are whether Dods' initial statement to Yunck was voluntary in the sense of not being coerced, and whether Dods' statements to Pinkerton were made after being properly advised of, and knowingly, voluntarily and intelligently waiving, the *Miranda* rights. The trial court answered both questions affirmatively, and its findings are properly supported regardless of whether they are reviewed for substantial evidence,[25] or "de novo" and without deference.[26] Thus, even if we assume that the trial court erred by admitting Dods' statements to Yunck, it did not err by admitting Dods' statements to Pinkerton, or by admitting the testimony of the victim and her mother.

■ Although we have assumed to this point that the trial court erred by admitting Dods' statements to Yunck, we cannot continue with that assumption unless we either (a) grant relief or (b) find that the court's admission of

[22]*Elstad*, 470 U.S. at 308.

[23]*Elstad*, 470 U.S. at 308; *see also United States v. Ceccolini*, 435 U.S. 268, 98 S. Ct. 1054, 55 L. Ed. 2d 268 (1978) (same question in Fourth Amendment context).

[24]*See State v. Russell*, 125 Wn.2d 24, 62, 882 P.2d 747 (1994); *see also State v. Wethered*, 110 Wn.2d 466, 474-75, 755 P.2d 797 (1988).

[25]*State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994).

[26]*Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996).

Dods' statements to Yunck, if error, was harmless error. The State argues the latter, and we agree. Constitutional error is harmless "if the appellate court is convinced beyond a reasonable doubt that any reasonable juror would have reached the same result in the absence of the error."[27] That test is met here, because every statement made to Yunck was also made to Pinkerton, and every statement made to Pinkerton was admissible under the trial court's findings. The statements to Yunck were purely cumulative, their exclusion could not have affected the outcome of the trial, and their admission does not warrant reversal.

Affirmed.

ARMSTRONG and HUNT, JJ., concur.

---

[27]*State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).