[No. 26870-8-I.   Division One.   May 11, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID
RICHARD RICHMOND, *Appellant*.

*Andrew P. Zinner* of *Washington Appellate Defender
Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robert Knief,
Deputy,* for respondent.

KENNEDY, J. — Appellant David Richmond appeals his
convictions of one count of first degree murder and one
count of attempted first degree murder. Specifically, Rich-
mond contends that the trial court erred in admitting state-
ments he made before he was advised of his *Miranda*[1]

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10
A.L.R.3d 974 (1966).

rights and that the State failed to prove premeditation beyond a reasonable doubt. We affirm.

## I
### A. Procedural Facts

On March 16, 1990, the State filed an information charging Richmond with one count of first degree murder and one count of attempted first degree murder. On July 23, 1990, the court held a CrR 3.5 hearing to determine the admissibility of certain statements Richmond made prior to being advised of his *Miranda* rights. The court found the statements admissible. Trial commenced on July 23, 1990. At the close of trial on July 26, 1990, the jury found Richmond guilty of both counts. On September 7, 1990, the court sentenced Richmond to concurrent terms within the standard range.

### B. Facts Pertaining to the CrR 3.5 Hearing

On March 13, 1990, at approximately 8:10 p.m., Officer Ross Wayne Robinson responded to a report of a stabbing. When he arrived at the address he had been given, he heard a woman screaming inside the apartment. He knocked on the door, and, when there was no response, he forced the door open and went inside. As he entered the bedroom, he saw Richmond strike a woman, Tracy Lynn Merritt, in the face. Richmond pulled his hand back to strike her a second time and Officer Robinson pulled his gun and told Richmond to freeze.

Officer Robinson asked Richmond and the woman who had called the police. They stated that they did not know but they thought it might have been the other person in the apartment. Officer Robinson asked where this other person was and Richmond pointed and stated that he was down the hallway. Officer Robinson went down the hallway and found Michael Cameron, the victim in the first degree murder charge, lying in a pool of blood in the bathroom. Officer Robinson also noticed a telephone in the bathroom with the receiver hanging by its cord.

Defense counsel moved to suppress Richmond's statements in response to Officer Robinson's questions, arguing that they were inadmissible as they were not preceded by a *Miranda* warning.

The court denied the motion to suppress, finding that,

> the officers, rather than having to advise of *Miranda* at this point in time were within their rights in trying to ascertain who had phoned the police, where the person was who had phoned the police. All of this indicated that, essentially, there was a crime in progress.
>
> It does seem to me those actions are reasonable under the circumstances. To require the officers to stop to advise of *Miranda* rights, while they hadn't determined who had phoned and where the person was who called 911, was not required under *Miranda*.
>
> I'm going to uphold the statements that were made by the defendant. . . . and the next one concerning who phoned 911. Not me; and, where is he? seems to me reasonable under the circumstances. After that the rights were read off the *Miranda* card and the defendant was fully advised of his rights under *Miranda*. It seems to me those are preliminary questions necessary to contain the situation and will be admissible in evidence.[2]

## II

Richmond asserts that his constitutional right to remain silent and his constitutional right to counsel were violated when the trial court admitted his pre-*Miranda* warning statements, in response to Officer Robinson's questions, that the other person in the apartment might have called 911 and that the other person was down the hallway. Richmond argues that these responses were the product of a custodial interrogation, and because Officer Robinson failed to advise him of his right to remain silent and his right to counsel before asking him who had called 911 and where the other person in the apartment was, his responses should have been suppressed.

---

[2]The court also entered the following written conclusion: "The initial questions of the police at the scene were general inquiries to assess the situation. They were not specifically addressed to the defendant and were made only as preliminary inquiries to the investigation and prior to the defendant being taken into custody."

■ A suspect must be advised of his Fifth Amendment rights before an agent of the State may conduct a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). The issue in the instant case is whether Officer Robinson's questions constituted a custodial interrogation.

A suspect is in custody for Fifth Amendment purposes and *Miranda* safeguards apply "as soon as a suspect's freedom of action is curtailed to a ' ". . . 'degree associated with formal arrest.' " ' " *State v. Short*, 113 Wn.2d 35, 40, 775 P.2d 458 (1989) (quoting *State v. Harris*, 106 Wn.2d 784, 789, 725 P.2d 975 (1986), *cert. denied*, 480 U.S. 940, 94 L. Ed. 2d 781, 107 S. Ct. 1592 (1987)). The sole inquiry is "whether the suspect reasonably supposed his freedom of action was curtailed." *Short*, 113 Wn.2d at 41; *see also State v. Sargent*, 111 Wn.2d 641, 649, 762 P.2d 1127 (1988) (emphasizing that the critical inquiry is whether the suspect's "freedom of movement was restricted").

Here, Richmond was in custody when Officer Robinson asked the two questions at issue. Officer Robinson burst into the apartment, pulled his gun, and told Richmond to "freeze". Officer Bissenger then subdued Richmond while Officer Robinson checked the apartment. At this point, Richmond was not free to leave the apartment. Although Richmond was not yet a suspect in Cameron's murder when the questions were asked, as Officer Robinson had not yet confirmed there had been a stabbing, the restriction on Richmond's freedom constitutes custody for *Miranda* purposes.

■ Officer Robinson's questions do not constitute an "interrogation", however. In *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980), the Supreme Court defined interrogation as:

> not only to express questioning, but also . . . any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.

(Footnotes omitted.) Interrogation reflects a "measure of compulsion above and beyond that inherent in custody itself." *State v. Worl*, 58 Wn. App. 443, 448, 794 P.2d 31 (1990), *rev'd on other grounds sub nom. State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991).[3]

Here, Officer Robinson addressed his questions to both Richmond and Merritt. Officer Robinson asked the questions to confirm the whereabouts of the person who made the call. Officer Robinson was responding to the report of a stabbing, thus, it was reasonable and prudent for Officer Robinson to be concerned that someone inside the apartment might be seriously injured. *See United States v. Herndon*, 390 F. Supp. 1017, 1020 (S.D. Fla. 1975) (stating that "in matters involving possible injury by gun shot, time is of the essence."); *State v. Barboza*, 57 Wn. App. 822, 828, 790 P.2d 647 (upholding warrantless search of house on basis that officers reasonably assumed that someone might be injured inside the house),[4] *review denied*, 115 Wn.2d 1014 (1990).

Moreover, Officer Robinson's questions do not fall within the definition of interrogation as they are not questions which Officer Robinson should have known were reasonably likely to elicit an incriminating response from Richmond.

---

[3] In *State v. Hensler*, 109 Wn.2d 357, 362, 745 P.2d 34 (1987), the court noted that a precise definition of "custodial interrogation" is illusive. The court stated that

[t]he overall concern of our prior cases is with the dual purposes of (1) protecting the individual from the potentiality of compulsion or coercion inherent in in-custody interrogation, and (2) protecting the individual from deceptive practices of interrogation.

109 Wn.2d at 362.

[4] Compare the "public safety" exception to the *Miranda* requirement as set forth in *New York v. Quarles*, 467 U.S. 649, 657, 81 L. Ed. 2d 550, 104 S. Ct. 2626, 2632 (1984). In *Quarles*, the Supreme Court held that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Quarles*, at 657. In *Quarles*, before *Miranda* warnings were given, the officers asked the defendant what he had done with his gun. The threat to the public safety was that the defendant had abandoned a loaded gun in a supermarket where a customer or employee might later find it.

Similarly, where officers are responding to a report of a stabbing, the need for answers to questions regarding the location of a victim who may well be seriously injured outweighs the need for the prophylactic rule protecting the Fifth Amendment privilege.

Nor do the questions reflect a measure of compulsion above and beyond that inherent in custody. The officer's questions were straightforward, nondeceptive, and were asked to determine whether there was a stabbing victim inside the apartment. Thus, we hold that the interrogation element required for a *Miranda* warning does not exist. *Cf. State v. Lane*, 77 Wn.2d 860, 467 P.2d 304 (1970).[5] Richmond's statements were properly admitted into evidence at trial.

Accordingly we affirm Richmond's convictions of first degree murder and attempted first degree murder.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PEKELIS and BAKER, JJ., concur.

---

[5] In *Lane*, at 861, while arresting the defendant on charges of armed robbery and while reading the defendant his *Miranda* rights, an officer interrupted and asked the defendant " 'Do you have the gun?' " The defendant replied " 'I don't have the gun. I wouldn't be dumb enough to have it here.' " At trial, the State introduced the defendant's statement.

On appeal, the defendant argued that the statement should have been suppressed as it was made before he was given a *Miranda* warning. The court found that, although the defendant was in custody when he made the statement, the statement was not the product of an interrogation. *Lane*, 77 Wn.2d at 862. The court stated that the question was not asked to elicit incriminating information; but rather was asked "for one reason only — the physical protection of the police." *Lane*, 77 Wn.2d at 862. The court held that

it is not a violation of either the letter or spirit of *Miranda* for police to ask questions which are strictly limited to protecting the immediate physical safety of the police themselves and which could not reasonably be delayed until after warnings are given.

*Lane*, 77 Wn.2d at 863.

Similarly, in the instant case, Officer Robinson's questions were asked not to elicit incriminating information from Richmond, but rather to determine whether someone inside the apartment was seriously injured.