[No. 12799-1-III.    Division Three.    November 3, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. ROSEMARY LOZANO, *Appellant*.

*Richard A. Smith* and *Smith & Scott*, for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Kenneth L. Ramm, Jr., Deputy*, for respondent.

SWEENEY, A.C.J. — Rosemary Lozano was arrested by her community corrections officer (CCO) for violation of sentence conditions. Before she was read her *Miranda* warnings, the CCO asked her if she had "anything on her person". She responded by placing heroin on his desk.

Ms. Lozano was convicted of possession of a controlled substance in a bench trial. She appeals, contending (1) the heroin should have been suppressed as fruit of an illegal interrogation; (2) the testimony of the officer who found the heroin was a conduit for introduction of the inadmissible confession and should have been suppressed; and (3) there is insufficient evidence to support the conviction. We affirm.

## FACTS

Ms. Lozano's CCO, Roy Gonzalez, happened to see her sitting in the back of a truck one day. Aware that she was an absconder (she had not reported to the Department of Corrections for almost a year), Mr. Gonzalez arrested her for failure to report.[1] RCW 9.94A.195.

Mr. Gonzalez took Ms. Lozano to his office at the Department of Corrections and called the police to have her transported to the county jail. He did not read her the *Miranda*

---

[1]A CCO may arrest an offender without a warrant and may search the offender's person and property if the CCO has reasonable cause to believe the offender has violated a condition of the sentence. RCW 9.94A.195.

warnings.[2] As they waited for the police to arrive, Mr. Gonzalez asked Ms. Lozano if she had "anything on her person". He told her the police would search her when they arrived and she would be searched again before incarceration. She responded by reaching into her pocket, withdrawing a tissue and placing it on his desk. The tissue contained a substance later identified as black tar heroin.

In a subsequent suppression hearing, the court ruled that Ms. Lozano's act of placing the heroin on the desk was testimonial and was therefore inadmissible because she had not been given her *Miranda* warnings. The heroin itself was admitted. Following a bench trial, Ms. Lozano was convicted of possession of a controlled substance: to wit, heroin. She was sentenced to 3 months of incarceration and 12 months of community supervision.

## DISCUSSION

Ms. Lozano contends the admission of the heroin violated her Fifth Amendment privilege against self-incrimination and should be excluded because failure to give *Miranda* warnings creates a presumption of compulsion.[3] *Oregon v. Elstad*, 470 U.S. 298, 307, 84 L. Ed. 2d 222, 105 S. Ct. 1285 (1985).

Before *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), the admissibility of in-custody statements was judged solely by the voluntariness of the statements within the meaning of the due process clause of the Fourteenth Amendment and Fifth Amendment protections against self-incrimination. *Elstad*, 470 U.S. at 304. The Fifth Amendment privilege against self-incrimi-

---

[2]In *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), the United States Supreme Court held that testimonial evidence obtained from a suspect in custody must be excluded from trial if certain procedures, including advisement of the right to remain silent, are not followed before interrogation of the suspect. *Miranda*, 384 U.S. at 478-79.

[3]Although the court stated in conclusion of law 4 from the suppression hearing neither the Fifth Amendment nor article 1, section 9 of the Washington State Constitution was violated by introduction of the heroin, Ms. Lozano does not argue violation of the Washington State Constitution on appeal.

nation applies only to coerced testimonial evidence.[4] *Elstad*, 470 U.S. at 306-07; *State v. Wethered*, 110 Wn.2d 466, 473, 755 P.2d 797 (1988). *Miranda's* protections are broader:

> Failure to administer *Miranda* warnings creates a presumption of compulsion. Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda*.

*Elstad*, 470 U.S. at 307. *See also Wethered*, at 473.

■ ■ Ms. Lozano's act of pulling the heroin from her pocket was compelled by the CCO's request and preceded *Miranda* warnings. The court properly suppressed introduction of that act at trial as a non-Mirandized testimonial act. *Wethered*, at 471; *State v. Dennis*, 16 Wn. App. 417, 423-24, 558 P.2d 297 (1976). The *Miranda* exclusionary rule, however, does not require exclusion of the fruits of a *Miranda* violation as inherently tainted. *Elstad*, 470 U.S. at 307; *Wethered*, at 473. Only evidence obtained in which violations of the right to *Miranda* warnings involve actual coercion will result in suppression as "fruits of the poisonous tree". *Wethered*, at 473-74.[5]

Ms. Lozano admitted Mr. Gonzalez did not promise her anything or threaten her when he asked if she had anything on her. Her production of the heroin was not coerced and therefore the heroin need not be suppressed. *Wethered*, at 475.

Ms. Lozano next contends Mr. Gonzalez's testimony at trial provided a conduit for introduction of the excluded testimonial act. She argues the State brought into evidence her

---

[4]Similarly, only statements obtained in abrogation of a suspect's free will are offensive to due process. *Elstad*, 470 U.S. at 304.

[5]Mr. Gonzalez's failure to read Ms. Lozano her *Miranda* rights was wrong. The dissent's suggestion is that suppression should be used as a sanction depending upon whether the failure to advise of *Miranda* warnings is patent or not. Dissent, at 126. This would be new law and the dissent, significantly, cites no authority for this proposition. But more significantly, the analysis does not relate to the issue before this court. Mr. Gonzalez had an obligation to read Ms. Lozano her *Miranda* warnings prior to interrogating her. There is no dispute that he did not do so, nor is there any contest that as a consequence of not reading her *Miranda* rights any statement or testimonial act must be suppressed.

compelled production of the heroin "through the back door" by allowing Mr. Gonzalez to describe finding the heroin on his desk after he and Ms. Lozano had occupied the room.[6]

She relies on two federal cases which discuss the introduction of hearsay, *United States v. Figueroa*, 750 F.2d 232 (2d Cir. 1984) and *United States v. Check*, 582 F.2d 668 (2d Cir. 1978); neither is on point. In both cases, the testimony of an unavailable informant was elicited by asking another witness how he responded to information from the informant. Specific information provided by the informants was effectively presented by the specificity of the witnesses' responses. For example, when asked what he told an informant, one witness responded, "I told [him] at the time I didn't particularly care whether or not the cocaine which I was supposed to get was 70 percent pure, nor the fact that it was supposed to come from a captain of detectives". *Check*, at 671. The court held that the testimony was "a transparent conduit for the introduction of inadmissible hearsay information . . ." offered to prove the truth of the matters asserted therein. *Check*, at 678. The court also noted that allowing the inadmissible hearsay testimony to "seep" in without the defendant being able to cross-examine the informant would impermissibly disadvantage the defendant. *Check*, at 684.

---

[6]The arguments advanced in the dissenting opinion are interesting and tenable, but are not based on the law as embraced by our Supreme Court or the United States Supreme Court, for that matter.

Moreover, although the dissent spends a good deal of effort discussing the following statements of the law, none of the briefs, the Clerk's Papers, the Verbatim Report of Proceedings or the majority opinion suggest that any are at issue here:

1. The law enforcement officer, having taken custody of a suspect, is required to explain *Miranda* rights prior to subjecting the suspect to interrogation.

2. Ms. Lozano was in custody at the time she was subject to interrogation by Mr. Gonzalez.

3. The act of turning over contraband in response to a request by a law enforcement officer is testimonial in nature.

4. A community corrections officer can be, and certainly was in this case, an agent of the State for purposes of *Miranda*.

5. And finally, *Miranda* warnings were required under the circumstances of this case.

The prosecutor's questions here concerning Ms. Lozano's opportunity and ability to lay the heroin-laden tissue on the desk established a connection between the circumstantial evidence of the heroin on the desk and Ms. Lozano's presence. This evidence was not presented to prove the testimonial act, but to establish the inference of possession.

Ms. Lozano finally contends there was insufficient evidence to find a violation of the Uniform Controlled Substances Act, RCW 69.50.401.[7] She claims no evidence was presented to connect her with the heroin found on Mr. Gonzalez's desk.

The question here is whether, after considering the evidence in the light most favorable to the State, a rational trier of fact could have found all the elements of the crime beyond a reasonable doubt. *State v. Hansen*, 122 Wn.2d 712, 718, 862 P.2d 117 (1993); *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When the sufficiency of evidence is challenged in a criminal conviction, all reasonable inferences from the evidence must be interpreted against the defendant. *Salinas*, at 201. " 'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.' " *Hansen*, at 718 (quoting *State v. Spruell*, 57 Wn. App. 383, 385, 788 P.2d 21 (1990)).

The State relied on the circumstantial evidence of the heroin on the desk and the physical proximity of only Mr. Gonzalez and Ms. Lozano to establish possession. A trier of fact may rely on circumstantial evidence alone if the evidence is such that it could support guilt beyond a reasonable doubt. *State v. Kovac*, 50 Wn. App. 117, 119, 747 P.2d 484 (1987). This evidence may include inferences supported by logical probability. *Kovac*, at 120. In its oral ruling, the court stated that the "only logical conclusion" reasonably following from the facts was that Ms. Lozano must have had possession of the heroin and placed it on the desk. We agree.

---

[7]RCW 69.50.401(d) provides that it is unlawful to possess a controlled substance. Possession may be either actual (in personal custody) or constructive (under the dominion or control of the person charged). *State v. Bradford*, 60 Wn. App. 857, 862, 808 P.2d 174, *review denied*, 117 Wn.2d 1003 (1991).

The dissent states that "[t]he problem is not with the physical evidence per se . . . [but] with the foundation through which the physical evidence was introduced". Dissent, at 126.

The physical evidence of the heroin is clearly admissible. *Wethered*, at 474. The issue is whether the nexus between Ms. Lozano and the heroin can be established by circumstantial evidence untainted by the failure to provide *Miranda* warnings. Again, the answer is clearly that it can. *Wethered*, at 474.

The dissent focuses on the resulting inference derived from the circumstantial evidence: Ms. Lozano put the heroin on Mr. Gonzalez's desk. But possession was established by circumstantial evidence having nothing to do with the testimonial act of Ms. Lozano producing the heroin. Much like contraband left in the back seat of a patrol car, an inference of possession arises if contraband is not there when the suspect is placed in the back of the patrol car and is there after he or she is removed. *See State v. Cottrell*, 86 Wn.2d 130, 542 P.2d 771 (1975); *People v. Becerra*, 188 Cal. App. 3d 772, 233 Cal. Rptr. 679 (1987). Or, as in the circumstances surrounding many controlled buys, there are no narcotics on the cooperating informant prior to the buy and there are narcotics on the cooperating informant following the buy. *See State v. Taylor*, 74 Wn. App. 111, 872 P.2d 53 (1994).

The dissent attempts to distinguish *Wethered*. But the first sentence in the opinion in *Wethered* dispels any serious suggestion that *Wethered* is distinguishable from the facts presented here: "The defendant challenges the refusal of the court to suppress hashish that he handed to police officers without being informed of his rights." *Wethered*, at 467. In *Wethered*, the arresting officer, Detective Keeney, approached the defendant and without warning Wethered of his *Miranda* rights "told Wethered he could either 'do it the easy way or the hard way', *i.e.*, turn the hashish over to him or he would have the vehicle impounded for a later search." *Wethered*, at 467-68. Wethered asked for and received assurances from the detective that a woman and baby in his car could leave and

the car would not be impounded if he turned the drugs over. After Wethered gave the drugs to Detective Keeney, the car was then impounded, despite the agreement with Detective Keeney. "Wethered moved to suppress all evidence seized pursuant to questioning by the police. The trial court determined that the production of the hashish was voluntary, and held the evidence admissible." *Wethered*, at 468. The Court of Appeals held Wethered's act of producing hashish was testimonial and inadmissible because he had not been warned of his constitutional rights pursuant to *Miranda*. However, it held the hashish itself admissible. It was this Court of Appeals ruling that the Supreme Court addressed when it held "[t]he Court of Appeals is clearly correct under current federal rulings." *Wethered*, at 473.

The dissent also suggests a distinguishing feature from *Wethered* by importing its own analysis

> that the State *could* have sought to introduce the hashish through two independent routes: (1) the impermissible route of allowing the interrogating officer to testify to confessional acts; and (2) the permissible route of allowing the undercover officer to testify to his observations. . . .
>
> . . . [T]here is no independent evidence tying the heroin to Ms. Lozano. There is only Mr. Gonzalez's tainted testimony.

(Italics ours.) Dissent, at 127. The dissent's analysis lifts the court's statements in *Wethered* from the context in which they were made. The "two independent routes" referred to by the dissent are discussed in *Wethered* for the purpose of passing upon the issue of harmless error:

> The hashish itself being admissible, the sole issue under the United States Constitution is whether the trial court's error in considering the *confessional aspect* of Wethered's surrendering the hashish was harmless error. A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable finder of fact would have reached the same result in the absence of the error. Here, the stipulated untainted evidence against Wethered — *the detective's observation of Wethered selling a brown chunky substance* from his car and the chemical test of the brown chunky substance revealing it to be a derivative of marijuana — overwhelmingly supports Wethered's conviction for unlawful delivery of a controlled substance. The error in admitting Wethered's act of handing the hashish to the officer was harmless.

(Citation omitted. Italics ours.) *Wethered*, at 474-75.

The *material* facts before the court in *Wethered* are indistinguishable from those before us in this case. The nexus between the defendant and the contraband, in both cases, was established by admissible circumstantial evidence; the only difference between these cases is the circumstantial evidence — not its admissibility.

The dissent states "[e]veryone can see clearly that the officer's testimony of his direct observation ('I saw her do it') is inadmissible. But his indirect testimony ('Somebody did it, it wasn't me') is just as objectionable." Dissent, at 128. The direct testimony is not that "I saw her do it". The direct testimony which was suppressed was the testimonial act producing the heroin. That is clearly set out in the Verbatim Report of Proceedings, at 65-66, and the court's findings of fact and conclusions of law, Clerk's Papers, at 15-16. There is no "indirect testimony". There is direct testimony (circumstantial evidence) addressing the factual question of how this heroin wound up on the CCO's desk. The testimony from Mr. Gonzalez (clearly admissible) is that he did not put it there and it was not there when Ms. Lozano came in but was there when she left. The logical inference from this circumstance (all of us agree) is that she put it there.

The dissent states "[t]he majority opinion sends a message to law enforcement that a failure to give *Miranda* warnings results in no more than a minor inconvenience along the road to conviction." Dissent, at 129. The dissent, much as Mr. Elstad misconstrued the nature of the protection afforded by *Miranda*, has failed to heed the admonition in *Elstad*:

> The Oregon court assumed and respondent here contends that a failure to administer *Miranda* warnings necessarily breeds the same consequences as police infringement of a constitutional right, so that evidence uncovered following an unwarned statement must be suppressed as "fruit of the poisonous tree." We believe this view misconstrues the nature of the protections afforded by *Miranda* warnings and therefore misreads the consequences of police failure to supply them.

*Elstad*, 470 U.S. at 304.

Additionally, Ms. Lozano contends the court shifted the burden of proof when the court stated "there has been no explanation why another CCO would have [put the heroin on the desk]." This argument is without merit. Ms. Lozano argued another CCO might have been in the office. The court was merely pointing out that her contention another CCO might have put the heroin on the desk was not a "logical probability". *Kovac*, at 120.

Affirmed.

MUNSON, J., concurs.

SCHULTHEIS, J. (dissenting) — "It is inconceivable that, 27 years after the United States Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), law enforcement officers play games with advising arrestees of their *Miranda* rights." *State v. Trevino*, 74 Wn. App. 496, 503, 873 P.2d 1214 (1994) (Munson, J., dissenting), petition for review filed June 20, 1994, Supreme Court cause 61890-9. Difficult issues arise in the *Miranda* context from time to time which try the conceptual talents of bar and bench. It is unrealistic to ascribe to police officers an ability to always make on-the-spot judgments correctly which members of the legal profession may then second-guess at their leisure. But this case is not complex, or at least was not at the arrest stage. There can no longer be any excuse when a law enforcement officer, having taken custody of a suspect and subjecting him to interrogation, fails to spend a minute or two explaining his *Miranda* rights. "The rule the Court established in *Miranda* is clear." *Fare v. Michael C.*, 442 U.S. 707, 717, 61 L. Ed. 2d 197, 99 S. Ct. 2560 (1979). The *Miranda* rule is "now so deeply embedded in our culture that most schoolchildren know not only the warnings, but also when they are required . . .". *Oregon v. Elstad*, 470 U.S. 298, 369 n.13, 84 L. Ed. 2d 222, 105 S. Ct. 1285 (1985) (Stevens, J., dissenting). This is not a situation where it is murky whether the suspect was in custody or whether the

questioning was designed to elicit incriminating evidence. It was settled at the time of the arrest that when a suspect in custody turns over contraband in response to a request by law enforcement, the act is testimonial in nature. *State v. Moreno*, 21 Wn. App. 430, 433, 585 P.2d 481 (1978), *review denied*, 91 Wn.2d 1014 (1979); *State v. Dennis*, 16 Wn. App. 417, 422-24, 558 P.2d 297 (1976). It was also settled that when a community corrections officer is acting in his capacity as a peace officer, he is an agent of the State for purposes of *Miranda*. *State v. Sargent*, 111 Wn.2d 641, 652, 762 P.2d 1127 (1988). The necessity of *Miranda* warnings under these facts is not debatable and the State does not contend otherwise. Past exhortation has not prevented this patent violation. The prospective loss of prosecutions might. Accordingly, I respectfully dissent.

The focus on whether the heroin was tainted under the fruit of the poisonous tree doctrine is misplaced. The problem is not with the physical evidence per se. Because Roy Gonzalez did not employ coercion, the heroin is not subject to suppression. *State v. Wethered*, 110 Wn.2d 466, 473-74, 755 P.2d 797 (1988). The problem, rather, is with the foundation through which the physical evidence was introduced. Mr. Gonzalez testified the heroin was not on his desk when he and Ms. Lozano entered the room. Suddenly, there it was. No one else was present. He did not place it there. The trial court drew the only conclusion any rational trier of fact could have reached:

> The only logical conclusion which reasonably follows from the facts stated is [the heroin] was placed there by Miss Lozano. It having been placed there by Miss Lozano, it must have been in her possession to do so.

The trial court's suppression ruling notwithstanding, the act of producing contraband was not in fact suppressed. The only evidence suppressed was what prompted Ms. Lozano to produce it. The majority finds this result acceptable because "[t]his evidence was not presented to prove the testimonial act, but to establish the inference of possession." Majority, at 121. This is new law.

"The word 'suppress' means to effectively prevent from using . . .". *Rodgers v. United States*, 158 F. Supp. 670, 680 (S.D. Cal. 1958). There are exceptions, such as allowing the use of otherwise suppressed testimonial evidence for impeachment. *State v. Brown*, 113 Wn.2d 520, 556, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989); *see also State v. Greve*, 67 Wn. App. 166, 173-74, 834 P.2d 656 (1992), *review denied*, 121 Wn.2d 1005 (1993). Here, the very evidence which the trial court found inadmissible in the prosecution's case in chief was admitted through semantical sleight of hand. The officer's testimony served the functional equivalent of asking him, "Now Mr. Gonzalez, without telling us where you got the heroin, where did you get the heroin?"

This case is distinguishable from *Wethered*. There, an undercover officer witnessed a drug transaction at such close range he could identify the drug as hashish. He called dispatch and responding officers asked the suspect to turn over the hashish, which he did. *Wethered* held that because no *Miranda* warnings were given, the confessional act of production was subject to suppression. *Wethered*, at 468-71. Absent a showing of actual coercion, however, the resulting physical evidence was not subject to suppression. *Wethered*, at 473-74. The distinguishing feature is that the State could have sought to introduce the hashish through two independent routes: (1) the impermissible route of allowing the interrogating officer to testify to confessional acts; and (2) the permissible route of allowing the undercover officer to testify to his observations. The State tried both, but needed only the latter:

> Here, the stipulated untainted evidence against Wethered — the detective's observation of Wethered selling a brown chunky substance from his car and the chemical test of the brown chunky substance revealing it to be a derivative of marijuana — overwhelmingly supports Wethered's conviction for unlawful delivery of a controlled substance.

*Wethered*, at 475.

In this case, there is no independent evidence tying the heroin to Ms. Lozano. There is only Mr. Gonzalez's tainted testimony.

The flaw in the majority's disposition centers on a distinction between direct and circumstantial evidence which does not exist. Everyone can see clearly that the officer's testimony of his direct observation ("I saw her do it") is inadmissible. But his indirect testimony ("Somebody did it, it wasn't me") is just as objectionable. The officer's knowledge in either event resulted from a *Miranda* violation. His knowledge was not the fruit of the poisonous tree, but the tree itself and whether the officer's knowledge is admitted into evidence directly or inferentially is a distinction without a difference. This is particularly true when, as here, only one logical conclusion flows from the circumstances. As Judge Holbrook observed in *People v. Morris*, 10 Mich. App. 526, 532, 159 N.W.2d 886, 888 (1968) (Holbrook, J., dissenting): "The prevailing opinion approves a procedure that would permit the use of suppressed evidence in court, inadmissible by direct offer, thus allowing entry through the back door that which has been refused entry through the front door."

The majority insists *Wethered* compels this result. *Wethered*, however, did not delineate the permissible scope of the interrogating officer's testimony. We know he could not testify to confessional acts. *Wethered*, at 468-71. We do not know whether he would be allowed to testify to postcontact events. We do not know, for example, whether he could testify as Mr. Gonzalez did in this case:

> As I approached Mr. Wethered's vehicle, I had nothing in my hand. I contacted Mr. Wethered and only Mr. Wethered. Shortly after making contact, I had hashish in my hand.

This is the acid test. If this hypothetical testimony is authorized by *Wethered*, then the majority is correct and I stand corrected.

The reader will observe that the majority and dissent share a notable feature in common: neither cites a single authority even remotely on point factually. This is not for lack of diligent research. It is because there is none. We should recognize that *Wethered* does not compel today's result, that we are dealing with a question of first impression, and that the majority opinion represents a significant extension of existing law.

Washington had an exclusionary rule in place long before the states were required to, and the underpinning of the rule is plain and direct. "[T]he state may not use, for its own profit, evidence that has been obtained in violation of law." *State v. Gunkel*, 188 Wash. 528, 534, 63 P.2d 376 (1936). It now seems the State may profit from its agent's wrongdoing by focusing not on the evidence and how it was obtained, but on the purpose for which it is offered. The majority opinion sends a message to law enforcement that a failure to give *Miranda* warnings results in no more than a minor inconvenience along the road to conviction. I would prefer to send the message, "When in doubt, Mirandize."