34 P.3d 906 (2001)
109 Wash.App. 253
STATE of Washington, Respondent,
v.
Pamela Faye SPOTTED ELK, Appellant.
No. 19230-0-III.
Court of Appeals of Washington, Division 3, Panel Two.
November 20, 2001.
As Amended on Denial of Reconsideration December 13, 2001.
*908 William D. Edelblute, Attorney at Law, Spokane, Counsel for Appellant.
Kevin M. Korsmo, Andrew J. Metts, III, Deputy Prosecuting Attorneys, Spokane, Counsel for Respondent.
*907 BROWN, A.C.J.
A jury convicted Pamela Spotted Elk of possessing heroin. On appeal, among other contentions, she argues her incriminating statements should have been suppressed because of a Miranda[1] violation. We agree, decide the remaining untainted evidence does not survive a harmless error analysis, and reverse.

FACTS
Police Officer Brad Linn of the Spokane Police Department saw Ms. Spotted Elk in downtown Spokane and suspected she had outstanding arrest warrants. After confirming his suspicions, Officer Linn arrested Ms. Spotted Elk. He did not give her the Miranda warnings. The officer knew Ms. Spotted Elk was a drug user and he was concerned she might have weapons, needles, or drugs on her person. Before cuffing and searching Ms. Spotted Elk incident to the arrest, Officer Linn asked, "Do you have anything on your person I need to be concerned about?" Report of Proceedings (RP) at 7. Usually, but apparently not here, Officer Linn's practice was to immediately explain: "Weapons, needles or anything that can poke me, stick me, of any kind?" RP at 7.
In response to Officer Linn's question, Ms. Spotted Elk removed a plastic container from the shirt pocket over her breast. Ms. Spotted Elk told the officer that the item was heroin belonging to a friend.
The State charged Ms. Spotted Elk with possessing heroin. At the suppression hearing, Officer Linn related he would not search the private areas of female detainees; he would not have turned the pocket inside out; and he would probably not have found the heroin. Assuming the female jail staff would later search Ms. Spotted Elk, as was his observation with male staff searching male detainees, Officer Linn opined Ms. Spotted Elk would have had her shirt pockets turned inside out. From this, the State argued, and the trial court accepted, inevitable discovery. The trial court, based upon officer safety considerations, denied the suppression motion. Under CrR 3.5, the trial court admitted her statement to Officer Linn that she had carried heroin for a friend.
At trial, claiming duress, Ms. Spotted Elk testified the heroin belonged to an abusive boyfriend. According to Ms. Spotted Elk, she donned her boyfriend's shirt, from the pocket of which the boyfriend removed drugs before she went out. Later, Ms. Spotted Elk noticed the heroin, but did not throw it away because she was afraid her boyfriend would beat her up. Ms. Spotted Elk refused to identify the boyfriend. On cross-examination, Ms. Spotted Elk said she told her probation officer, Tim Foley, about the abusive boyfriend.
Over objection, the State called Mr. Foley in rebuttal. During the State's offer of proof, Mr. Foley testified Ms. Spotted Elk told him she had been carrying the drugs for a friend. Mr. Foley said he and Ms. Spotted Elk had discussed abusive relationships "on many occasions[,]" but that she did not then seek any help. RP at 69. On cross-examination, Mr. Foley indicated Ms. Spotted Elk had a tendency to date abusive men. The trial court ruled it would not allow Mr. Foley to testify as to abusive relationships, but it would allow him to testify as to what Ms. Spotted Elk told him regarding her possession of the heroin. Mr. Foley then told the jury what Ms. Spotted Elk told him about carrying the drugs for a friend. In surrebuttal, Ms. Spotted Elk denied telling Mr. Foley she carried the drugs for another person.
In closing argument, the State argued, "in this case the State's dealing with a phantom. We don't know who the boyfriend is, or if the boyfriend even exists, or if the boyfriend's abusive." RP at 101. The defense argument is not part of our record, however, in rebuttal, the State argued:

*909 And I would submit to you that her boyfriend may have had ... an idea of how much drugs he had, but unless he's weighing it out every little bit, that's a really tiny amount. So I would submit to you that what she told Mr. Foley most probably was the truth. She was delivering it for a friendor, taking it to a friend as a favor, and she didn't see what the big deal was.
You do haveand so why would you come up with this story about being a battered woman if you don't believe her version? For the simplest reason in the world, you don't want to get in trouble. The evidence is she is a convicted felon for second degree robbery. This is another crime. She doesn't want to be convicted of a crime.
RP at 104.
The jury returned a guilty verdict. Ms. Spotted Elk appealed, specifying error in failing to suppress her statements and the heroin, and allowing prejudicial argument.

ANALYSIS
The dispositive issue is whether the trial court erred in denying Ms. Spotted Elk's suppression motion with respect to (1) her statement to Officer Linn, (2) her act of removing the heroin from her pocket, and (3) the heroin itself.
Ms. Spotted Elk did not assign error to the trial court's CrR 3.5 and CrR 3.6 findings of fact. Accordingly, those findings are verities on appeal. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994). This court reviews the trial court's conclusions of law de novo. State v. Armenta, 134 Wash.2d 1, 9, 948 P.2d 1280 (1997).
The State concedes Ms. Spotted Elk was under arrest and had not been given Miranda warnings at the relevant time. This court has reasoned, "Failure to administer Miranda warnings creates a presumption of compulsion. Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under Miranda." State v. Lozano, 76 Wash. App. 116, 119, 882 P.2d 1191 (1994).
In Lozano, a community corrections officer (CCO) failed to give Miranda warnings to a defendant before asking if she had "anything on her person." Id. at 117-18, 882 P.2d 1191. The CCO explained she would be searched anyway. Id. at 118, 882 P.2d 1191. The defendant then reached into her pocket, took out a tissue and placed it on the CCO's desk. Id. Heroin was found in the tissue. The Lozano court ruled the act of producing the contraband was testimonial and inadmissible under Miranda, but allowed circumstantial evidence to connect Ms. Lozano to the substance placed on the desk because it was not connected to the testimonial act. Id. at 122, 882 P.2d 1191.
Here, the testimonial act was inextricably interwoven with the production of the heroin, precluding direct evidence of the testimonial act. Ms. Spotted Elk directly handed Officer Linn the heroin in response to his question as a testimonial act; she did not place it on a desk or leave it in the back seat of a patrol car as was discussed in Lozano. Id. In this case, circumstantial evidence was not offered or reasonably available to establish possession, solely the inadmissible direct evidence. This difference distinguishes Ms. Spotted Elk's case from Lozano.
Regarding the testimonial act, the similarities between cases are striking; without Miranda warnings, Ms. Spotted Elk responded to a question from Officer Linn that was nearly identical to that asked in Lozano. Id. at 118, 882 P.2d 1191. In this arrest situation, the context was certainly as coercive, if not more so, than in Lozano, where the defendant waited in the CCO's office pending transport to jail. Id. at 117-18, 882 P.2d 1191.
Moreover, the officer knew Ms. Spotted Elk to be a drug user. He was concerned with and suspected both weapons and drugs. Given the broad nature of his question, which, according to this record, lacked his usual proviso explaining he was looking for weapons, needles or items that could poke or stick him, he should have known his query was reasonably likely to elicit an incriminating response. See State v. Birnel, 89 Wash. App. 459, 467, 949 P.2d 433 (1998). And, *910 because the question went beyond the scope of a precautionary inquiry regarding weapons, the question reflected a measure of compulsion beyond that inherent in custody. Id. Accordingly, the circumstances in this case were sufficiently coercive to constitute an interrogation for Miranda purposes.
The State persuaded the trial court that Officer Linn's question fell within the officer safety exception to the Miranda requirements. In Washington, "it is not a violation of either the letter or spirit of Miranda for police to ask questions which are strictly limited to protecting the immediate physical safety of the police themselves and which could not reasonably be delayed until after warnings are given." State v. Lane, 77 Wash.2d 860, 863, 467 P.2d 304 (1970).
In Lane, while one officer read Mr. Lane his Miranda rights, another officer specifically asked the defendant if he had a gun. Lane, 77 Wash.2d at 861, 467 P.2d 304. The Lane court noted the officer's question was related solely to officer safety with "good reason to believe" the defendant "was armed and potentially dangerous." Id. at 862-63, 467 P.2d 304. Division One of this court subsequently extended this exception to Miranda to a situation where the officer was trying to ascertain the location of a stabbing victim. State v. Richmond, 65 Wash.App. 541, 545-46, 828 P.2d 1180 (1992).
Lane and Richmond support a series of propositions. The police may ask a question of a defendant prior to Miranda warnings if (1) the question is solely for the purpose of officer or public safety, and (2) the circumstances are sufficiently urgent to warrant an immediate question. Lane, 77 Wash.2d at 862-63, 467 P.2d 304; Richmond, 65 Wash.App. at 544-45, 828 P.2d 1180. If both conditions are met, the question does not constitute an interrogation in violation of Miranda. Richmond, 65 Wash.App. at 544-46, 828 P.2d 1180. Next, we apply these principles and discuss why we conclude the exception does not apply here.
First, the officer's broad and apparently unqualified question was not related solely to his own safety. Officer Linn was concerned with and suspected the existence of drugs, not just hazardous objects. And, Ms. Spotted Elk certainly understood the question to apply to contraband on her person. See Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (considering perceptions of suspect rather than intent of officer).
Second, no sense of urgency attended the arrest. Nothing in the trial court's findings of fact indicate Ms. Spotted Elk posed an apparent threat to the officer or the public. See Lane, 77 Wash.2d at 862-63, 467 P.2d 304; Richmond, 65 Wash.App. at 545, 828 P.2d 1180.
In sum, regarding her non-verbal testimonial acts, Ms. Spotted Elk's case is virtually indistinguishable from Lozano; hence, the trial court erred in declining to suppress Ms. Spotted Elk's testimonial act of retrieving the heroin from her pocket and handing it to the officer in response to his request. It follows that Ms. Spotted Elk's verbal statement, which amounted to a contemporaneous acknowledgment of guilt in response to the officer's question, should be suppressed as well. See State v. Wethered, 110 Wash.2d 466, 471, 755 P.2d 797 (1988) (noting act of handing over contraband "was a confession of knowledge" with regard to contraband). By proceeding without giving the Miranda warnings, Ms. Spotted Elk's constitutional right against self-incrimination was violated. See Lozano, 76 Wash.App. at 119, 882 P.2d 1191.
Regarding Ms. Spotted Elk's failed motion to suppress the heroin, physical evidence obtained via a Miranda violation is not inherently excludable absent actual coercion. Oregon v. Elstad, 470 U.S. 298, 307, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); Wethered, 110 Wash.2d at 473, 755 P.2d 797; Lozano, 76 Wash.App. at 119, 882 P.2d 1191. Here, no evidence of actual coercion exists in the form of force, threats, or promises. Despite Ms. Spotted Elk's speculative inference of ill-motive drawn from Officer Linn's suspicions and open-ended question, we proceed, assuming without deciding the heroin was not the product of actual coercion, but rather the fortuitous byproduct of Officer Linn's overly broad *911 question. See Lozano, 76 Wash.App. at 119, 882 P.2d 1191.
Normally, the next inquiry is whether the error was harmless. See Wethered, 110 Wash.2d at 474-75, 755 P.2d 797. Because the error infringed on Ms. Spotted Elk's constitutional right against self-incrimination, the error is presumed prejudicial, and the State bears the burden of proving the error was harmless beyond a reasonable doubt. State v. Miller, 131 Wash.2d 78, 90, 929 P.2d 372 (1997); State v. Easter, 130 Wash.2d 228, 242, 922 P.2d 1285 (1996); State v. Caldwell, 94 Wash.2d 614, 618, 618 P.2d 508 (1980). A constitutional error is harmless if the reviewing court is satisfied the untainted evidence was so overwhelming as to necessarily result in a guilty verdict. Easter, 130 Wash.2d at 242, 922 P.2d 1285; State v. Guloy, 104 Wash.2d 412, 426, 705 P.2d 1182 (1985). Significantly, the state does not argue harmless error. In view of the difficulty in identifying any untainted evidence in this record, the lack of argument is understandable.
Generally, evidence obtained directly or indirectly through exploitation of an unconstitutional police action must be suppressed, unless the secondary evidence is sufficiently attenuated from the illegality as to dissipate the taint. Wong Sun v. United States, 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); State v. Birdsong, 66 Wash.App. 534, 539-40, 832 P.2d 533 (1992).
Here, it is doubtful Ms. Spotted Elk's and Mr. Foley's testimony was sufficiently attenuated from the Miranda violation. It is apparent the improperly admitted incriminatory statements compelled Ms. Spotted Elk to testify and explain why she had the contraband on her person. See State v. Lewis, 130 Wash.2d 700, 706 n. 2, 927 P.2d 235 (1996) (noting improper evidence admitted in State's case in chief may compel defendant to testify in rebuttal). Had Ms. Spotted Elk avoided testifying, Mr. Foley would not have testified in rebuttal. Because the incriminating statements likely triggered the above testimony, we reason the testimony was tainted.
Consequently, the untainted evidence consisted primarily of the heroin and Officer Linn's otherwise admissible testimony. This evidence showed (1) Officer Linn met Ms. Spotted Elk, (2) arrested her on an unrelated warrant, (3) deposited heroin into an evidence bag after arresting Ms. Spotted Elk, and (4) left the heroin at the property room after escorting Ms. Spotted Elk to the jail. This untainted evidence provides, at best, an exceedingly slim circumstantial thread, if any, on which to establish a nexus between Ms. Spotted Elk and the contraband, and is unlike the circumstances presented or discussed by analogy in Lozano. See Lozano, 76 Wash.App. at 122, 882 P.2d 1191. We cannot say the untainted evidence was so overwhelming as to necessarily result in a guilty verdict. Cf. Wethered, 110 Wash.2d at 474-75, 755 P.2d 797. Accordingly, Ms. Spotted Elk's conviction must be reversed.

CONCLUSION
We hold the trial court erred when denying Ms. Spotted Elk's suppression motion with respect to her verbal statements and non-verbal acts intended as statements made in response to custodial inquiry without the necessary Miranda warnings. Further, although the heroin recovered was admissible, under the circumstances of this case, we cannot say the remaining untainted evidence was so overwhelming as to necessarily result in a guilty verdict. In view of our holdings, it is unnecessary to discuss the issues of inevitable discovery or prosecutor misconduct.
We reverse and remand for new trial.
SCHULTHEIS, J. and KATO, J., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).