# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 74217-5-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| TRAVIS LEE RIFE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 12, 2017 |

MANN, J. — Travis Rife was convicted of possession of a controlled substance (methamphetamine) and possession of drug paraphernalia in a bench trial. Rife moved to suppress evidence found in the search of his backpack that was hanging from his wheelchair. The court denied the motion. On appeal, Rife contends that (1) the backpack was not a part of his person for purpose of a search incident to arrest and (2) the court erred in admitting statements he made before he was read his Miranda[1] rights. The search of the backpack was proper as a search incident to arrest. While Rife's postarrest but pre-Miranda statements should not have been admitted, the error was harmless. We affirm.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

## FACTS

At 3:30 a.m. on July 29, 2015, Edmonds Police Officer Nicholas Haughian saw Rife sitting in his wheelchair on 76th Avenue West, near Highway 99 in Edmonds. Haughian recognized Rife and knew that there were outstanding warrants for his arrest. Haughian parked and approached Rife on foot. Haughian then asked if Rife was aware of his outstanding warrants. Rife stated that he was. Haughian informed Rife that he was under arrest and handcuffed Rife while he was seated in his wheelchair. Haughian then searched Rife incident to the arrest. In the pocket of Rife's pants, Haughian found a pipe. Haughian helped Rife to his patrol car and placed him in the back of the vehicle.

Haughian searched Rife's wheelchair, bucket, and backpack. The backpack was slung across the wheelchair's back so that its shoulder straps hung over the chair's top corners. It was physically impossible for Rife to access the backpack while he was in his chair and it was hanging behind him. He could only access the backpack by either (1) getting up out of his chair and sitting on an object next to the chair or (2) kneeling on the wheelchair itself.

Haughian testified that he searched the backpack, wheelchair, and bucket because he intended to transport the items with Rife. Before searching the backpack, Haughian asked Rife if there was anything in the backpack "that was going to stick me." Rife told him that he "would probably find a few rigs." As a new officer, Haughian did not know what a "rig" was. Haughian asked what "rig" meant and Rife explained that "a rig was basically a term for a needle, for ingesting narcotics." In the backpack, Haughian found a hard-shell eyeglasses case that contained another pipe similar to the

first one, rigs, a butterfly knife, and "a white crystal-like substance." Haughian placed the wheelchair, bucket, and backpack into the police car.

After the search, Haughian read Rife his Miranda rights. When asked if Rife understood his rights, Rife answered: "I'm still talking to you, aren't I?" Haughian then asked Rife what the white crystal-like substance in the eyeglasses case was. Rife explained that it was "ice, crystal, and go fast," slang for methamphetamine. Haughian testified that Rife "laughed at [him] for not already knowing what the items were called on the street." Rife also told Haughian that the pipe in his backpack was for smoking methamphetamine. Haughian performed a field test and identified the substance as methamphetamine. Haughian then took Rife to jail. The encounter between Rife and Haughian was cordial and cooperative.

The State charged Rife with one count of possession of a controlled substance (methamphetamine) and one count of possession of drug paraphernalia.

Rife moved to suppress his pre-Miranda statements to the officer and the physical evidence found in the backpack. The trial court denied the motion.

Rife was found guilty on both counts after a stipulated bench trial. Rife was sentenced to 90 days for possession of drug paraphernalia and twelve months for possession of methamphetamine.

## ANALYSIS

The trial court issued findings of fact and conclusions of law in its order denying Rife's motion to suppress. We review challenged findings of fact for substantial evidence and determine whether the findings support the legal conclusions. State v. Mayer, 184 Wn.2d 548, 555, 362 P.3d 745 (2015). Evidence is substantial when it is

-3-

enough to persuade a fair-minded person of the truth of the stated premise. Mayer, 184 Wn.2d at 555. We review conclusions of law and conclusions relating to Miranda violations de novo. Mayer, 184 Wn.2d at 555.

I

Rife argues first that the trial court erred in denying his motion to suppress the evidence seized in the warrantless search of his backpack. Consistent with State v. Brock, 184 Wn.2d 148, 355 P.3d 1118 (2015), we disagree.

The Fourth Amendment of the United States Constitution provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Article 1, section 7 of the Washington State Constitution "does not turn on reasonableness, instead guaranteeing that '[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law.'" State v. Byrd, 178 Wn.2d 611, 616, 310 P.3d 793 (2013) (quoting WASH. CONST. art. I, § 7). Article I, section 7 of the Washington State Constitution provides "broad privacy protections for individuals and generally prohibits unreasonable police invasions into personal affairs." Brock, 184 Wn.2d at 153.

Under article 1, section 7, "a warrantless search is per se unreasonable unless the State proves that one of the few 'carefully drawn and jealously guarded exceptions' applies." Byrd, 178 Wn.2d at 616 (quoting State v. Bravo Ortega, 177 Wn.2d 116, 122, 297 P.3d 57 (2013). At issue here, is the exception for a "search incident to arrest," which provides authority for an arresting officer to search the arrestee's person and his or her personal effects. Brock, 184 Wn.2d at 154; Byrd, 178 Wn.2d at 617-20.

-4-

There are two distinct types of searches incident to arrest. The first is a search of the area within the arrestee's immediate control. This type of search "must be justified by concerns that the arrestee might otherwise access the article to obtain a weapon or destroy evidence." Byrd, 178 Wn.2d at 617 (citing Chimel v. California, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969).

At issue in this case is the second type of search incident to arrest: "a search of the arrestee's person (including those personal effects immediately associated with his or her person—such as purses, backpacks, or even luggage)." Brock, 184 Wn.2d at 154. While a search of the area within the arrestee's control must be grounded in a concern for officer safety or evidence preservation, the only precondition for a search of the arrestee's person is a lawful arrest. Brock, 184 Wn.2d at 154. This is because courts presume that safety and evidence justifications exist when the arresting officer takes the arrestee's personal items into custody. Brock, 184 Wn.2d at 154.

An article is immediately associated with the arrestee's person and can be searched "if the arrestee has actual possession of it at the time of a lawful custodial arrest." Byrd, 178 Wn.2d at 621 (emphasis added). As explained in Byrd:

> The time of arrest rule reflects the practical reality that a search of the arrestee's "person" to remove weapons and secure evidence must include more than his literal person. . . . When police take an arrestee into custody, they also take possession of his clothing and personal effects, any of which could contain weapons and evidence.

178 Wn.2d at 621.

Here, the search of Rife's backpack was proper for two reasons. First, the backpack was a part of Rife's person because the backpack was "immediately associated" with his person. The backpack was slung over the wheelchair's back, not

-5-

directly attached to Rife, but still closely associated with his person. It is irrelevant that Rife could not reach the backpack without standing up out of his chair. Rife's backpack was "in such immediate physical relation to the one arrested as to be in a fair sense a projection of his person." Byrd, 178 Wn.2d at 623 (quotations omitted). Thus, the backpack was part of Rife's person. See also, State v. MacDicken, 179 Wn.2d 936, 942, 319 P.3d 31 (2014) (duffel bag and laptop bag in actual and exclusive possession and subject to search); Brock, 184 Wn.2d at 159 (backpack worn at time of arrest subject to search).

Second, Rife's backpack, wheelchair, and bucket were loaded into the patrol car and transported with Rife to jail. As Haughian testified, "it would [have been] inappropriate to leave [Rife's] personal belongings on the street at the location where [the officers] had arrested him." As our Supreme Court concluded in Brock, "Put simply, personal items that will go to jail with the arrestee are considered in the arrestee's 'possession' and are within the scope of the officer's authority to search." Brock, 184 Wn.2d at 158. Because Rife's backpack, similar to Brock's backpack, was transported with Rife, it was within Rife's immediate possession and within the scope of the search incident to arrest.

The trial court properly denied Rife's motion to exclude evidence seized during the backpack's search.

II

Rife argues next that the trial court erred in admitting his statements telling Haughian before he searched the backpack that he "would probably find a few rigs" and that "a rig was basically a term for a needle, for ingesting narcotics" because these

-6-

statements were made before Rife was read his Miranda rights. While we agree, the error was harmless.

Miranda warnings protect a defendant's constitutional right not to make incriminating confessions or admissions to the police while in the coercive environment of police custody. State v. Heritage, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). The warnings must be given "when a suspect endures (1) custodial (2) interrogation (3) by an agent of the State. Heritage, 152 Wn.2d at 214. "'Interrogation' can be express questioning, or any words or actions reasonably likely to elicit an incriminating response." In re Pers. Restraint of Cross, 180 Wn.2d 664, 685, 327 P.3d 660 (2014). If a reasonable person in the suspect's position would have felt that his or her freedom was curtailed to the degree associated with a formal arrest, then that person is in custody. Heritage, 152 Wn.2d at 214. "Without Miranda warnings, a suspect's statements during custodial interrogation are presumed involuntary." Heritage, 152 Wn.2d at 214.

In Washington, the police may question a suspect prior to giving Miranda warnings if (1) the questions are solely for the purpose of officer or public safety and (2) the circumstances are sufficiently urgent to warrant an immediate question. State v. Lane, 77 Wn.2d 860, 862-63, 467 P.2d 304 (1970); State v. Spotted Elk, 109 Wn. App. 253, 260, 34 P.3d 906 (2001); State v. Richmond, 65 Wn. App. 541, 545-46, 828 P.2d 1180 (1992). To determine whether the public-safety exception applies, we ask whether there was an "objectively reasonable need to protect the police or the public from any immediate danger." State v. Finch, 137 Wn.2d 792, 829, 975 P.2d 967 (1999).

At the outset, there is no dispute that the challenged statements were made after Rife was in custody. Haughian testified that he informed Rife that he was under arrest, handcuffed him, searched him, and placed him in the patrol car before starting to search the backpack. Before searching the backpack, Haughian asked Rife if there was anything in the pack "that was going to stick me?" thereby eliciting the challenged statements. Haughian's inquiry and Rife's responses were made prior to Haughian reading Rife the Miranda warnings. We therefore presume the statements were involuntary and therefore inadmissible. Heritage, 152 Wn.2d at 214.

The State argues that Rife's statements fall within the public-safety exception based on Haughian's testimony that he asked if anything was going to stick him out of concern for his own safety—he did not want to "get poked with anything sharp like a knife or blade of any sort, or a needle." We agree that Haughian's inquiry was objectively reasonable to protect his safety. But officer (or public) safety is only one part of the test to meet the public-safety exception. The State must also demonstrate that circumstances were "sufficiently urgent to warrant an immediate question." Spotted Elk, 109 Wn. App. at 260.

In Lane, for example, Lane was accused of armed robbery. The police forced entry into Lane's apartment, identified themselves, told him he was under arrest, and handcuffed him. Prior to reading Lane his Miranda rights, the police asked if he had a gun, to which Lane replied "I don't have the gun. I wouldn't be dumb enough to have it here." 77 Wn.2d at 861. Our Supreme Court upheld admission of these statements because the police had "good reason to believe that Lane was armed and potentially

-8-

dangerous even in the company of a number of officers with guns drawn." 77 Wn.2d at 862-63.

In Richmond, police responded to a phone call report of a stabbing. When the officer arrived at the reported address, he heard a woman screaming and forced the door open and went inside. As he entered he saw the defendant, Richmond, strike a woman in the face. The officer pulled out his gun and ordered Richmond to freeze. He then asked Richmond who had phoned in the report. Richmond responded that he didn't know but it may have been the other person in the apartment. Richmond pointed down the hallway. The officer went down the hallway and found the victim lying in a pool of blood in the bathroom. Richmond, 65 Wn. App. at 542. This court affirmed the trial court's admission of the statements concluding: "Officer Robinson was responding to the report of a stabbing, thus, it was reasonable and prudent for Officer Robinson to be concerned that someone inside the apartment might be seriously injured." Richmond, 65 Wn. App. at 545.

In contrast, in Spotted Elk, police saw the defendant on the street and suspected she had outstanding warrants. After confirming the warrants, the police officer arrested Spotted Elk. Before searching her or giving Miranda warnings, the officer asked if she had anything on her person "I need to be concerned about?" Spotted Elk, 109 Wn. App. at 256. Spotted Elk responded by pulling a plastic container out of her shirt pocket and telling the officer that it was heroin that belonged to a friend. The trial court denied Spotted Elk's motion to suppress the pre-Miranda statements. The Court of Appeals reversed the conviction finding the statements violated Miranda because the officer's inquiry was not related solely to his own safety and because "no sense of urgency

attended the arrest." "Nothing in the trial court's findings of fact indicate Ms. Spotted Elk posed an apparent threat to the officer or the public." Spotted Elk, 109 Wn. App. at 260.

Here, like Spotted Elk, and unlike Lane and Richmond, there was no evidence presented at trial, or in the trial court's findings, that indicated Rife presented an immediate risk to Haughian or anyone else. Rife was disabled and had been arrested, handcuffed, searched, and placed in the patrol car. It was 3:30 a.m. and there was no evidence that the site was busy. There was nothing urgent preventing Haughian from reading Rife his Miranda warnings prior to inquiring and searching Rife's backpack. Rife's statements that there might be a few "rigs" for ingesting narcotics in his backpack violated Rife's rights under Miranda and should have been excluded.

III

The State next argues that even if the postarrest statements violated Miranda, the error was harmless. We agree. A constitutional error is harmless "if the reviewing court is satisfied that the untainted evidence was so overwhelming as to necessarily result in a guilty verdict." Spotted Elk, 109 Wn. App. at 261. Haughian found a pipe in Rife's pocket during his search incident to arrest. The officer then found methamphetamine and a pipe in Rife's backpack. After he was given Miranda warnings Rife admitted that the substance was methamphetamine and that the pipes were for ingesting drugs. Thus, even without Rife's postarrest but pre-Miranda statement that he had needles in his backpack used for ingesting drugs, the other admissible evidence overwhelmingly established that Rife possessed a controlled substance and possessed drug paraphernalia. The error in admitting the statements was harmless.

We affirm.

_____
Mann, J.

WE CONCUR:

_____
Appelwick, J.

_____
Becker, J.